Doris DENNIS

v.

**WHITE WAY CLEANERS, L.P., et al.**

Court of Appeals of Tennessee, at Nashville.

Jan. 9, 2003 Session.

March 4, 2003.

Opinion Denying Petition for Rehearing April 7, 2003.

Permission to Appeal Denied by Supreme Court Oct. 6, 2003.

R. Stephen Doughty, Nashville, Tennessee, for the appellant Doris Dennis.

H. Rowan Leathers, III and Douglas B. Janney, III, Nashville, Tennessee, for the appellee, White Way Cleaners, L.P.

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

## OPINION

A supervisory employee of a dry cleaning firm filed suit against her employer alleging she was terminated from her job and replaced by a man. She contended that her employer's action was motivated by gender discrimination, in violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4–21–101. The defendant argued that her termination was not based on discrimination, but was the result of a general downsizing and reorganization of the work force. The trial court granted summary judgment to the employer. We reverse, because we believe the plaintiff raised a genuine issue of material fact as to the reasons behind her termination.

## I.

White Way Cleaners is a business concern that has been furnishing dry cleaning and laundry services in Nashville for many years. The company employs about 100 people at any one time. The plaintiff, Doris Faye Dennis, began working for White Way as a presser in the early 1970's and continued to work there on and off for several years, before she left to focus her energies on the needs of her growing family. Ms. Dennis subsequently worked at a number of other jobs including apartment manager, truck driver and construction worker.

In 1994, she returned to White Way, and quickly rose to a position variously referred to as "plant manager" and "floor supervisor." The job carried the responsibility of overseeing all aspects of the production end of the business, including dry cleaning, spotting, assembly, inspection, bagging and shipping. Ms. Dennis also had to act as a "fill in" from time to time, working in the place of line employees who were absent from work.

In 1996, Rex Carrigan was promoted to General Manager of White Way, and Ms. Dennis began reporting to him. Mr. Carrigan had previously been the supervisor over the route drivers. In his new position, Mr. Carrigan handled the transmission of payroll information, human resources, work scheduling, sales, and complaint resolution. His duties did not include floor supervision or work on the production line, but he would occasionally have to fill in for a route driver who was absent.

On February 1, 1999, Wayne Elam, Sr., the owner of White Way Cleaners, sold the assets of the business to a limited partnership comprised of three brothers, Art, Ross & Reed Hummell. The new owners, who had never before been involved in the dry cleaning business, told all the employees that for the time being they could keep their jobs, and that their rates of pay would remain the same. For the benefit of the brothers, Mr. Elam identified three employees who he said were essential to the operation of the company, Rex Carrigan, Faye Dennis, and Rhonda Stewart. Mr. Carrigan and Ms. Dennis were the highest-paid salaried employees of White Way (route drivers were paid by commission). Mr. Carrigan earned an annual salary of $70,200, while Ms. Dennis earned $62,400.

As they familiarized themselves with the cleaning business, the new owners continued to operate White Way in the same manner as Mr. Elam. This included the previous owner's practice of contracting out payroll services to a company called Paychex. Mr. Carrigan collected reports of the hours worked by each employee, and transmitted them electronically to the outside contractor.

Unfortunately, the new owners found that the business was not as profitable as they had anticipated. In fact, it lost a substantial amount of money every month. With the help of a management consultant, they determined that their labor costs were high when compared to the dry cleaning industry as a whole.

On June 30, 2000, Ms. Dennis was summoned to the office of Art Hummell and told that she was being terminated from employment. Mr. Hummell did not criticize her work, and the defendant does not contend that the termination was due to her job performance. The record indicates that she was a hard-working, conscientious, and effective supervisory employee. A Separation Notice signed by Mr. Hummell stated that her termination was "due to company down-sizing."

Art Hummell later stated that he had terminated Ms. Dennis as part of a general

reorganization at the company. In the same month, Rhonda Stewart, who had supervised White Way's retail stores and subsequently became the marking room manager, was also terminated, and several other female managers were demoted. Shortly thereafter, White Way ran an advertisement in the Tennessean stating that it was seeking qualified employees for all positions, and hired some new people.

The reorganization included eliminating the title of Floor Supervisor from the company's table of organization. A new position, Director of Operations, was created to perform the same functions that Ms. Dennis had performed. Wayne Elam, Jr., son of the former owner, was named to the new position the day after Ms. Dennis was terminated. Mr. Elam had been doing "fill-in" work, temporarily replacing route drivers, pressers and others when they were out sick. He was earning $36,200 a year. With his new position, he was given a $5,000 raise, for a total salary of $41,200.

The only difference between the duties of Floor Supervisor and those of Director of Operations is that when Mr. Elam became Director of Operations, he took over Mr. Carrigan's task of compiling payroll data for transmission to Paychex. Mr. Carrigan himself was given a new position as Director of Sales, with no reduction in salary. The position of General Manager was apparently eliminated, although one table of organization in the record refers to Mr. Elam as the General Manager, instead of Director of Operations.

## II. PROCEEDINGS IN THE TRIAL COURT

On August 8, 2000, Ms. Dennis filed a Complaint in the Chancery Court of Davidson County, alleging that she had been discriminated against because of her sex, in violation of Tenn.Code Ann. § 41–21–401(a)(2). White Way filed an Answer denying her allegations. On December 28, 2001, White Way filed a Motion for Summary Judgment, accompanied by a Memorandum of Law, a Statement of Undisputed Material Facts, affidavits, the plaintiff's answers to the defendant's interrogatories, and transcripts of the depositions of Doris Dennis, Art Hummell and Ross Hummell. On February 4, 2002, the plaintiff filed a memorandum in opposition to the defendant's Motion for Summary Judgment, accompanied by additional discovery materials.

On February 21, 2002, the trial court issued a Memorandum and Order granting the defendant's motion. The court stated that the plaintiff had failed to bring forth sufficient proof to create a genuine question of material fact as to one of the four essential elements required to make out a case of gender discrimination: that she had been replaced in her job by a man. The court did note that "a significant portion of the plaintiff's duties were parceled out to a male employee who now performs those tasks and the tasks of payroll for a lesser salary than the plaintiff was making when she was terminated," but goes on to say that "[t]hese facts establish that the plaintiff was not replaced. The summary judgment record establishes that the plaintiff's job was eliminated."[1]

The court also rejected the plaintiff's claim that the defendant's rationale for terminating her was merely a pretext. The court noted that White Way experienced between $20,000 and $50,000 in op-

---

1. The significance of this finding lies in the different treatment the courts afford to those employment decisions where one employee who is a member of a protected class is replaced by one who is not, and those where an employer has eliminated jobs as part of a genuine reduction in the size of the workforce. *See Barnes v. Goodyear Tire and Rubber Co.,* 48 S.W.3d 698 (Tenn.2000); *Barnes v. GenCorp, Inc.,* 896 F.2d 1457 (6th Cir. 1990).

erating losses each month after the Hummells took over, and that the new owners had to put $1,000,000 of their own money into the business to fund the company's operations. In granting summary judgment, the court stated that it was relying "upon the principle of law that it is not the prerogative of the court to invade legitimate, nondiscriminatory business decisions of an employer." This appeal followed.

## III. THE TENNESSEE HUMAN RIGHTS STATUTES

The Tennessee Human Rights Act (THRA) prohibits discrimination "in employment, public accommodations and housing" on the basis of "race, creed, color, religion, sex, age or national origin." The Act specifically states that one of its purposes is to "[p]rovide for execution within Tennessee of the policies embodied in the Federal Civil Rights Act of 1964, 1968 and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended." Tenn. Code Ann. § 4–21–101(a).

■ Because of the commonality of purpose between the Tennessee Human Rights Act and the federal statutes, "we may look to federal law for guidance in enforcing our own anti-discrimination laws." *Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698, 705 (Tenn.2000). *See also Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884 (Tenn.1996). The general analytical framework that we use below to examine the plaintiff's claim applies to claims of employment discrimination based on either federal or state law, and is the same, whether the alleged discrimination is based on age, sex, race or any other category covered by the Tennessee Human Rights Act.

■ While we share the trial court's belief that the judiciary is not authorized to intrude upon an employer's legitimate

nondiscriminatory business decisions, the Tennessee Human Rights Act does give us the power to scrutinize employment decisions when discrimination is alleged. We note that the general financial situation of an employer is often a factor in personnel decisions, but it does not immunize the employer from the statutory obligation to make those decisions in a non-discriminatory manner. "Ordinarily, economic downturns and shakeups provide an employer great latitude in making personnel decisions. However, Congress refuses to afford an employer at any time—economically fortuitous or economically disastrous—the right to discriminate on the basis of sex." *Bellaver v. Quanex*, 200 F.3d 485 (7th Circuit 2000).

## IV. STANDARDS FOR SUMMARY JUDGMENT

■ Summary judgment should not be regarded as a substitute for trial of disputed factual issues. *Gonzales v. Alman Construction Co.*, 857 S.W.2d 42 (Tenn.Ct.App. 1993); *Taylor v. Nashville Banner Publishing Co.*, 573 S.W.2d 476 (Tenn.Ct.App. 1978). It is an appropriate vehicle for dismissing a case only where there is no dispute as to material facts, and the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993). A trial court ruling on a motion for summary judgment must consider the pleadings and evidence before it in the light most favorable to the opponent of the motion, and all legitimate conclusions of fact must be drawn in favor of that opponent. *Gray v. Amos*, 869 S.W.2d 925 (Tenn.Ct.App.1993).

■ In the case before us, the trial court noted that the defendant did not dispute, for purposes of the summary judgment motion, that the plaintiff established the first three elements of a prima facie case of employment discrimination

under Tenn.Code Ann. § 4–21–101:(1) that the plaintiff was a member of the protected class, (2) that the plaintiff was subjected to an adverse employment action, (3) that the plaintiff was qualified for the particular position. *See Frazier v. Heritage Federal Bank for Savings*, 955 S.W.2d 633 (Tenn.Ct.App.1997). The court found, however, that the plaintiff failed to create a genuine issue of material fact as to the fourth element: that the terminated employee was replaced by someone outside the protected classification. We respectfully disagree.

The trial court reasoned that the defendant did not replace Ms. Dennis, but rather that it eliminated her job as part of a general reorganization of the company to save money. It appears to us, however, that the defendant assigned all of Ms. Dennis' duties to Mr. Elam, gave him one additional duty (collection of payroll information and transmission of that information to Paychex) and changed the title of the job from Floor Supervisor to Director of Operations. When we consider the evidence in the light most favorable to the opponent of the motion, we conclude that the plaintiff has raised genuine issues of material fact as to all four required elements of her cause of action, and that she has established her prima facie case.

▊▊▊▊ In an employment discrimination case, the establishment of all the prima facie elements by the plaintiff shifts the burden of production to the defendant to articulate a legitimate non-discriminatory business reason for the challenged employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant can do so, then the burden shifts again to the plaintiff to present some evidence that the defendant's reasons are pretextual. *Versa v. Policy Studies, Inc.*, 45 S.W.3d 575 (Tenn.Ct.App.2000). On a motion for summary judgment, the plaintiff need not totally refute the defendant's assertions as to its reasons for its actions, but must present some evidence, whether direct or circumstantial, which is sufficient to create a genuine issue of material fact as to the motivations of the defendant.

The trial court noted that it was undisputed that White Way was losing money, that Ms. Dennis was the second highest paid employee of the company, and that Mr. Elam agreed to perform "a significant portion of the plaintiff's duties" in addition to payroll, for less money. The plaintiff does not dispute the defendant's contention that it saved money by replacing Ms. Dennis with Mr. Elam.

She notes, however that Rex Carrigan was the highest paid employee of the company, and that when the defendant removed Mr. Carrigan from his job as general manager, it transferred him to a sales job at the exact same salary. Art Hummell testified at deposition that in his prior business experience, it was always a mistake to retain an employee whose salary had been reduced, because such employees do not remain motivated. He offered this theory to explain both why he did not offer Ms. Dennis another job at a lower salary, and why he did not reduce Mr. Carrigan's salary when he changed his duties.

We do not believe this rationale is sufficiently persuasive to totally dispel the question as to whether the principals of White Way chose to address its admitted financial difficulties in a way that was discriminatory as to the plaintiff, and we therefore reverse the order of the trial court. In so doing, we are not thereby determining that Ms. Dennis is entitled to prevail on her claim for employment discrimination. We have merely found that she has raised genuine issues of material fact as to her claim, which make summary judgment inappropriate.

## IV.

The judgment of the trial court is reversed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee, White Way Cleaners, L.P.

## OPINION DENYING PETITION FOR REHEARING

 White Way Cleaners has submitted a respectful and thoughtful Petition to Rehear. The Company contends that this court's opinion conflicts with and misapprehends existing principles of employment law. Specifically, the Petitioner argues that as a matter of law, the job Ms. Dennis performed was eliminated as part of a reduction in force, and therefore that she could not be deemed to have been replaced by Mr. Elam.

Petitioner refers us to the case of *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365 (6th Circ.1999) and other cases for the proposition that Mr. Elam's assumption of one additional duty that Ms. Dennis did not perform conclusively negates the fourth element required for a prima facie case of employment discrimination: that a terminated employee was replaced by someone outside the protected classification.

The Petitioner relies upon the following language from the *Godfredson* case:

"a work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, *a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when work is redistributed among existing employees already performing related work.* A person is replaced only when another employee is reassigned to perform the plaintiff's duties."

173 F.3d at 372 (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457 (6th Circ.1990), but adding emphasis that was not present in the *Barnes* opinion).

It appears to us that *Godfredson* case presents a very different situation than the one before us. Fifty-nine year old Godfredson had been the Director of Marketing for Hess & Clark's money-losing pet food division when the employer decided to eliminate the largest component of that division. Godfredson had devoted between 60 to 80 percent of his time to the discontinued division. Godfredson was terminated from his position, and his remaining duties were assumed by two younger employees, who continued to perform their other duties, and maintained their job titles and responsibilities.

In contrast, none of Ms. Dennis' duties were eliminated, and all were assumed by Mr. Elam. Although the job title was changed, the only difference between her responsibilities and his was that Mr. Elam also took over Mr. Carrigan's duty of collecting and transmitting payroll information for processing by Paychex. Ms. Dennis testified at deposition that she would also have been capable of assuming that duty if asked. As the federal court noted in *Barnes v. GenCorp, Inc.*, supra, an employer cannot avoid liability by changing the job title or by making minor changes to a job indicative of an attempt to avoid liability. *See* 896 F.2d at 1465, footnote 10.

 White Way also argues that even if Ms. Dennis had established a prima facie case of discrimination, she did not produce relevant evidence to rebut Mr. Hummel's testimony that he decided to terminate her for legitimate business reasons. The Peti-

tioner particularly objects to our mention of the retention of Rex Carrigan at an unreduced salary, arguing that its treatment of Mr. Carrigan is totally irrelevant, because he was not "a similarly situated employee."

We believe that the Petitioner is looking at the question too narrowly. Even though Mr. Carrigan performed a different function from Ms. Dennis, he was similarly situated in that he held one of the few high-level management positions in this relatively small firm. We also note that the record indicates that Rhonda Stewart, who was the third most highly paid salaried employee of the company, was terminated at about the same time that Ms. Dennis was, and that other female managers were allegedly demoted within the same time period.

Petitioner argues that these individuals were also not "similarly situated" to Ms. Dennis. Carried to its logical conclusion, their argument would ultimately mean that Ms. Dennis' job was so unique that the company's actions towards any of its other employees cannot be used to establish an inference of discrimination that can survive summary judgment. We do not agree.

As we stated in our opinion, we do not know whether Ms. Dennis is entitled to prevail on her claim. We have merely determined that she has raised genuine issues of material fact which make summary judgment inappropriate.

The Petition is denied.