IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2004 Session

## JUDY S. PARNELL v. APCOM, INC., ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. I-23592     Timothy L. Easter, Judge**

**No. M2003-00178-COA-R3-CV - Filed December 21, 2004**

Forty-six year old female employee who had worked for company for seventeen years filed this action against her employer after her position and employment were terminated. She claims her termination constituted a breach of contract and violated the Tennessee Human Rights Act. The trial court dismissed the THRA claim on summary judgment as time barred, holding that the savings statute did not apply to THRA claims. The remaining contract claims were tried and resulted in judgment in favor of the defendants. Plaintiff appeals. We find that the trial court erred by holding the savings statute inapplicable to THRA claims against private employers. We also find that the plaintiff failed to establish a *prima facie* case of discrimination under the THRA. We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Ernest W. Williams, Franklin, Tennessee, for the appellant, Judy S. Parnell.

Karyn C. Bryant and Jonathan Motley, Nashville, Tennessee, for the appellees, APCOM, Inc., George Fehrmann, State Industries, Inc., John R. Lindahl, and Herbert W. Lindahl.

### OPINION

Plaintiff Judy Parnell was hired at APCOM, Inc. in August of 1977.[1] In September 1994, after seventeen years of employment and at the age of forty-six, her position as APCOM's Vice President of Communications as well as her employment were terminated.[2] Plaintiff filed suit September 27, 1995 in the Williamson County Chancery Court asserting breach of employment

---

[1]APCOM, Inc. manufactures and sells appliance components.

[2]Plaintiff was originally hired as personnel director and was subsequently promoted to Vice President of Communications in 1990.

contract and violation of the Tennessee Human Rights Act (THRA).[3]  Plaintiff, however, filed a Notice of Voluntary Nonsuit and the suit was dismissed September 4, 1997.

Plaintiff filed this action September 3, 1998 making substantially the same claims against the same parties as in her September 1995 Complaint.[4]  The defendants are APCOM, Inc. (Plaintiff's employer), State Industries, Inc. (APCOM's parent company), George Fehrmann (APCOM Chief Executive Officer, Chairman of the Board and President), John R. Lindahl, Sr. (Chairman of the Board at State Industries) and Herbert W. Lindahl (President of State Industries).

Plaintiff alleged that numerous times from 1990 until a few days before she left, George Fehrmann, to whom Plaintiff reported, discussed the possibility of Plaintiff becoming president of APCOM.  "He broached the subject with me on numerous occasions, restating that I was to become the next president of APCOM and that he was training me and grooming me for that."  By terminating her employment at APCOM, Plaintiff asserts, Defendants breached an oral promise to promote her to President of APCOM.  She claims that her termination constituted age and/or gender discrimination.

Defendants filed a motion for summary judgment asserting *inter alia* that Plaintiff's discrimination claims under the THRA were time barred.  Defendants asserted that Tennessee's "savings statute," codified at Tenn. Code Ann. § 28-1-105, did not save claims brought under the THRA, because such a cause of action did not exist at common law, and the THRA includes its own "internal" statute of limitation.  Consequently, Defendants argued that Plaintiff's September 3, 1998 complaint was untimely in that it was filed four years after the termination of her employment. Moreover, Defendants argued that Plaintiff had presented no evidence that APCOM had discriminated against her because of her age or sex.  The trial court granted the motion for summary judgment thereby dismissing Plaintiff's age and gender discrimination claims under the THRA, holding that the THRA claims were time barred.

Plaintiff's remaining claims, breach of contract and promissory estoppel, were disposed of at trial.[5]  The court held that Plaintiff did not prove the required elements of a contract claim.  The court explained that Mr. Fehrmann's statements did not rise to the level of a contract offer, that there was no mutual assent, no consideration and that Fehrmann lacked the authority to bind APCOM in

---

[3]Plaintiff's complaint also asserted that Defendants violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA).  These claims, however, were dismissed when Defendants removed the matter to the United Stated District Court and filed a motion for summary judgment which was granted in part and dismissed in part.  Specifically, the U.S. District Court dismissed Plaintiff's Title VII and ADEA claims as time-barred and remanded the remaining state law claim to the trial court.  Thus, this appeal involves only the aforementioned state law claims, breach of contract and violation of the Tennessee Human Rights Act, which were remanded to the trial court.

[4]Neither the September 27, 1995 complaint nor documents pertaining to the subsequent nonsuit are included in the record.  However, the Memorandum from the United Stated District Court for the Middle District of Tennessee recites the procedural history with detail.

[5]Plaintiff raised her claim of promissory estoppel in response to Defendants' motion for summary judgment.

naming his successor.[6] The trial court also held that the alleged statements made to Plaintiff by Mr. Fehrmann were merely reflections of Mr. Fehrmann's aspirations for Plaintiff. Moreover, the trial court held that Plaintiff's promissory estoppel claim failed, because she failed to show detrimental reliance that resulted in substantial economic detriment.

Plaintiff sets forth two issues on appeal. First, she asserts that the trial court erred when it granted summary judgment for Defendants, thereby dismissing Plaintiff's claims under the Tennessee Human Rights Act. Second, Plaintiff argues that the trial court erred when it dismissed Plaintiff's breach of contract and promissory estoppel claims.

## Claims under the Tennessee Human Rights Act

Plaintiff claims that the termination of her employment violated the Tennessee Human Rights Act.[7] Her THRA claims were dismissed on summary judgment as being time barred. We review a trial court's summary judgment award *de novo*, with no presumption of correctness. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). Summary judgments are not appropriate when genuine issues of material fact exist. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. Ct. App. 1993). The moving party has the burden of proof and must either conclusively establish an affirmative defense or negate an essential element of the non-moving party's claim. *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd*, 847 S.W.2d at 215). If and when this is accomplished, the burden shifts to the non-moving party. *McCarley*, 960 S.W.2d at 588. The court "must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd*, 847 S.W.2d at 210-211. If there is any doubt as to whether or not a genuine issue exists, summary judgment shall be denied. *Byrd*, 847 S.W.2d at 211; *McCarley,* 960 S.W.2d at 588.

## Statute of Limitation

The trial court's dismissal of Plaintiff's claims of age and gender discrimination under the THRA as time barred was based on what the trial court characterized as a "logical conclusion" of *Eason v. Memphis Light, Gas & Water Division, a Division of the City of Memphis*, 866 S.W.2d 952 (Tenn. Ct. App. 1993). The *Eason* defendant was a governmental entity. It argued that the savings statute could not be applied in actions against governmental entities to extend the statute of limitations. The *Eason* court disagreed, basing its ruling on two factors. One, that the legislature clearly intended to place governmental entities in the same standing as private employers as it pertained to claims under the THRA. *Id.* at 955. Two, that in the absence of a limitation period within the THRA itself, the general statute of limitations applies and thus the savings statute applies.

[6]Pursuant to APCOM bylaws, the president had to be elected by the company's board of directors and the decision would also have to be approved by John Lindahl, Chairman of the Board at State Industries.

[7]The Tennessee Human Rights Act prohibits "discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment . . . ." Tenn. Code Ann. § 4-21-101.

*Id*. at 956. As the conclusion reveals, *Eason* found the existence or absence of an internal statute of limitation to be most significant.

> We conclude that at the time the Tennessee Human Rights Act was passed by the legislature, the clear legislative intent was to include the governmental entities and place them in the same standing as private employers. Immunity of the sovereign was removed as though the sovereign was a private citizen. *In the absence of a limitation period in the act itself, the general statute of limitations applies and thus the savings statute, T.C.A. § 28-1-105, was applicable*. (emphasis added)

*Eason*, 866 S.W.2d at 955-56. In addition to the two grounds stated above, the *Eason* court found it significant that while there was no period of limitation within the THRA (an "internal" statute of limitation) when the *Eason* plaintiff commenced the action, the legislature had added an "internal" statute of limitation to the THRA shortly thereafter.[8] Finding the inclusion versus the omission of an internal period of limitation significant as well, as is evident in its memorandum opinion, the trial court held:

> The Eason Court concluded that the plaintiff's action was saved by virtue of the T.H.R.A. statute as it existed at the time of filing. The internal statute of limitation had not been added.
> Plaintiffs argue that Eason applies to governmental entities. However, the Eason Court concluded that at the time the T.H.R.A. was passed by the legislature, "the clear legislative intent was to include the governmental entities and place them in the same standing as private employers. Immunity of the sovereign was removed as though the sovereign was a private citizen." Eason at 956.
> Eason concluded that in the absence of a limitation period in the act itself, the general statute of limitation applies and thus the saving statute, T.C.A. 28-1-105, was applicable.
> This Court finds that a limitation period is no longer absent in the act (T.H.R.A.) itself, and a logical conclusion of Eason, since the act now has an internal statute of limitations, supports a finding that the Plaintiff's T.H.R.A. claims are time barred because the saving statute no longer applies to claims made under the T.H.R.A.

The trial court's ruling is an extension, though the reverse of the conclusion in *Eason*. Accordingly, we will examine *Eason*, along with other authorities, to determine whether the conclusion reached by the trial court is correct, that is to extend the conclusion in *Eason*.

---

[8]The amendment provides that a civil cause of action under the THRA shall be filed within one (1) year after the alleged discriminatory practice ceases. Tenn. Code Ann. § 4-21-311(d)(1992).

There are two significant differences between *Eason* and the case at bar. One, the only defendant in *Eason* was a governmental entity.[9] None of our defendants are governmental entities. Two, when the action was commenced in *Eason*, the THRA did not have an internal statute of limitations. Since then the legislature amended the THRA by adding a twelve-month statute of limitation within the act. Thus, the THRA internal statute of limitation was not applicable in *Eason* but is here.

The issue presented in *Eason* was whether the savings statute was applicable to a THRA action against a governmental entity. *Eason* at 953. That is not the issue here; we must determine whether the savings statute is applicable to a THRA action against a private employer.

The plaintiff in *Eason* urged the court to follow *Williams v. Memphis Light Gas and Water Division*, 773 S.W.2d 522 (Tenn. Ct. App. 1988) wherein a plaintiff had brought a Governmental Tort Liability Act (GTLA) action against a governmental entity. The GTLA provided a statute of limitation of twelve months within which an action could be commenced against a governmental entity. *Williams* held that the savings statute could not be used against a governmental entity to extend the running of the statute of limitation. *Id*. at 523. The defendant in *Eason*, however, argued that *Williams* could be distinguished because the GTLA contained an internal statute of limitation; the THRA did not. Agreeing with the plaintiff, the *Eason* court held that the savings statute *was* applicable to actions brought against governmental entities under the THRA because, "[I]n the absence of a limitation period in the act [THRA] itself, the general statute of limitations applies and thus the savings statute . . . was applicable." *Id*. at 955-56. Though we respectfully disagree with the aspect of the conclusion that the savings statute applies to actions against governmental entities, that issue is not before us.[10] The issue presented here is different. Our issue is whether the savings statute applies to a THRA claim against a private employer.

---

[9]The defendant in *Eason* was a governmental entity, our defendants are not. Though *Eason* reached a conclusion that the savings statute would or would not apply to a private employer as well as a governmental entity, we respectfully view that conclusion as *dicta* to the extent it pertains to private employers because the only defendant in *Eason* was a governmental entity.

[10]We remain of the firm belief that the savings statute is *not* applicable to actions against governmental entities unless such is expressly stated in the statute. Our courts have repeatedly held that the GTLA demands strict compliance with the GTLA statute of limitation. *See Nance v. City of Knoxville*, 883 S.W.2d 629 (Tenn. Ct. App. 1994); *Rael v. Montgomery County*, 769 S.W.2d 211 (Tenn. Ct. App. 1988); *Williams v. Memphis Light, Gas, and Water Div*., 773 S.W.2d 522 (Tenn. Ct. App. 1988). The GTLA states that actions against governmental entities "must be commenced within twelve (12) months after the cause of action arises." Tenn. Code Ann. § 29-20-305(b). In *Nance*, *Rael* and *Williams* the plaintiffs' original actions, each filed within the twelve-month limitations period, were dismissed and the plaintiffs then filed new actions after the expiration of the limitations period. In each, this court held that the statutes could not be used to "extend the period" within which an action must be filed against a governmental entity. *Nance*, 883 S.W.2d at 631-32; *Rael*, 769 S.W.2d at 213-14; *Williams*, 773 S.W.2d at 523. Tenn. Code Ann. § 28-1-115, which allows a plaintiff to bring an action in state court following the dismissal of an action in federal court for lack of jurisdiction, does not apply to GTLA actions, because the statute would effectively extend the GTLA statute of limitation period. *Nance*, 883 S.W.2d at 632.

The role of this court in construing statutes is to ascertain and give effect to the legislative intent. *Wilson v. Johnson County*, 879 S.W.2d 807, 809 (Tenn. 1994). Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. *Carson Creek Vacation Resorts, Inc. v. State, Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). If necessary to a determination of the meaning of a statute, however, recourse may be had to considerations of public policy and to the established policy of the Legislature as evidenced by a general course of legislation. *Woodroof v. City of Nashville*, 192 S.W.2d 1013, 1015 (Tenn. 1946).

The *Eason* court placed great emphasis on the statement, "the clear legislative intent was to include the governmental entities and place them in the same standing as private employers." *Eason*, 866 S.W.2d at 955. While that statement is correct, we believe the extent to which the *Eason* court – and the trial court in the case at bar – applied that statement is misplaced. Indeed, the legislature intended to place governmental entities on the same footing as private employers in the context that a THRA cause of action may be brought against the governmental entity as it can against a private employer. That premise, however, does not require that we place private employers on the same footing as governmental entities *to the extent* the savings statute is or is not applicable. It is this conclusion with which we respectfully disagree.

Statutes of limitation applicable to actions against governmental entities are to be strictly construed; however, since none of our defendants are governmental entities, the GTLA constraints have no relevance to the issue presented. In that none of our defendants are governmental entities, there is no reason to strictly construe the THRA internal statute of limitation or the applicability of the savings statute to the THRA. In 1978 the Legislature enacted a Human Rights Act, T.C.A. § 4-21-101, the declared purpose of which was

> "to assure that Tennessee has appropriate legislation prohibiting discrimination in employment, public accommodations and housing" and "to provide for execution within Tennessee of the policies embodied in the Federal Civil Rights Act of 1964, 1968 and 1972 and the Age Discrimination in Employment Act of 1967. . . ." The Act created a Human Rights commission, defined discriminating practices, and provided a mechanism for hearing complaints administratively and issuing orders remedying discriminating practices. The Act prohibits discriminatory employment practices by employers "with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Remedies are broad in scope and include reinstating or upgrading employee status, damages for humiliation and embarrassment, and attorney fees.

*Roberson*, 1988 WL 74236, at *1.

The purpose of the Tennessee savings statute is to provide a diligent plaintiff an opportunity to renew a suit that is dismissed by any judgment or decree that does not conclude the plaintiff's right of action. *Dukes v. Montgomery County Nursing Home*, 639 S.W.2d 910, 913 (Tenn. 1982). A

diligent plaintiff has been defined as one whose timely filed complaint puts the defendant on notice that the plaintiff intends to assert her legal rights. *Lee v. Crenshaw*, 622 F.2d 202 (6th Cir. 1980). The savings statute provides:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or his representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

Tenn. Code Ann. § 28-1-105(a). Our courts have repeatedly recognized that statutory language must be applied according to the spirit of the statute and our courts have repeatedly found the spirit of the savings statute to be self evident.

> The statute has not merely letter but a spirit. That spirit is manifested in the history of the statute. . . . It is that a plaintiff shall not be finally cast out by the force of any judgment or decree whatsoever, not concluding his right of action, without an opportunity to sue again within the brief period limited. *Nashville, C & St. L. Ry. v. Bolton*, 134 Tenn. 447, 184 S.W. 9, 11 (1916). Thus, this Court has long been committed to the view that the "savings statute" is remedial and should be liberally construed in furtherance of its purpose and in order to bring cases within its spirit and fair intention. *Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993). In effect, the savings statute confers upon a plaintiff who files a second action within one year of a voluntary non-suit of a first action the same procedural and substantive benefits that were available to the plaintiff in the first action. *Dukes v. Montgomery County Nursing Home*, 639 S.W.2d at 913.

*Cronin v. Howe,* 906 S.W.2d 910, 912 (Tenn. 1995). *See also Sharp v. Richardson,* 937 S.W.2d 846, 849 (Tenn. 1996) (the savings statute has long been liberally construed in order to bring cases within its spirit and fair intention.)

There are numerous remedial statutes which have internal statutes of limitation, like the THRA, yet the savings statute applies. Plaintiffs who bring actions for workers' compensation benefits, which were not available at common law, are afforded the benefit of the savings statute even though the Workers' Compensation Act contains an internal statute of limitations. *See Dukes v. Montgomery County Nursing Home*, 639 S.W.2d 910, 912 (Tenn. 1982) (finding that the savings statute, Tenn. Code Ann. § 28-1-105, was available to a workers' compensation claimant who filed second action within one year of voluntary nonsuit of her action seeking workers' compensation benefits.) The same is true with actions under the Federal Employers' Liability Act, for which our savings statute will prevent the running of the internal statute of limitations. *See* Federal Employers' Liability Act, § 6 as amended 45 U.S.C.A. § 56; *Breneman v. Cincinnati, N. O. & T. P. Ry. Co.*, 346 S.W.2d 273 (Tenn. Ct. App. 1961).

This court is committed to the view that the saving statute is "remedial and should be liberally construed in furtherance of its purpose and in order to bring cases within its spirit and fair intention." *Dukes*, 639 S.W.2d at 912-913, (citing *Nashville, C & St. L. Ry. v. Bolton,* 184 S.W. 9 (Tenn. 1916); *Woods v. Palmer*, 496 S.W.2d 474 (Tenn. 1973); *Brooksbank v. Roane County*, 341 S.W.2d 570 (Tenn. 1960); *Balsinger v. Gass*, 379 S.W.2d 800 (Tenn. 1964)). Since the savings statute applies to acts such as the Workers' Compensation Act and the Federal Employers' Liability Act, we see no reason the savings statute should not apply to the THRA, internal statute of limitation notwithstanding. Thus, we find the savings statute applies to THRA claims against private employers such as our defendant APCOM.

Our plaintiff re-filed her complaint on September 3, 1998, which was within one year of her September 4, 1997 voluntary dismissal without prejudice. Accordingly, we vacate the trial court's judgment to the extent it dismissed Plaintiff's claims under the THRA as time barred.

### *Prima Facie* Case of Discrimination under the THRA

Defendants motion for summary judgment was based on two grounds, the statute of limitations defense discussed above and a second ground, that Plaintiff failed to establish a *prima facie* case of discrimination under the THRA. The trial judge granted the motion dismissing Plaintiff's claims under the THRA without addressing the second issue. We can either remand the issue to the trial court or we can rule on the matter ourselves. Based on our review of the record before us, we find that the issue is straight forward and in the interest of judicial economy, we shall rule on the second issue.

To establish a *prima facie* case of discrimination under the THRA, Plaintiff must establish that she (1) was a member of the protected class, (2) was subjected to an adverse employment action, (3) was qualified for the position, and (4) was replaced by an individual outside the protected class. *Dennis v. White Way Cleaners, L.P.*, 119 S.W. 3d 688, 694 (Tenn. Ct. App. 2003). At the time of her termination, Plaintiff was a forty-six year old female who had been employed at APCOM for seventeen years, therefore she was a member of a protected class. Her employment with APCOM was terminated; therefore, she was subjected to an adverse employment action. Nothing in the record indicated that she was unqualified for her post; to the contrary, she appeared to be most qualified. Since she is the respondent to a motion for summary judgment, Plaintiff is entitled to all reasonable inferences. *Byrd*, 847 S.W.2d at 210-211. There being no evidence to challenge her qualifications, we assume she was qualified. Thus, we find there was no meritorious basis to terminate Plaintiff, at least no basis relative to her industry or the quality of her work. Based on the foregoing, we find that Plaintiff established the first three elements. Plaintiff, however, has failed to establish the fourth element, that she was replaced by someone outside her protected class.

Defendants claim that Plaintiff's employment was terminated because her position was terminated. They presented uncontroverted evidence which established that her former responsibilities were reassigned to other existing employees – Larry Lillard, APCOM's forty-four year old Vice President of Manufacturing; George Fehrmann, APCOM's sixty year old President;

and Ralph Ringstaff, a thirty-three year old employee who returned to work part-time; as well as other existing female employees. Herbert Lindahl, president of APCOM's parent company, testified as follows:

> Q. Was [sic] her duties given to anyone else?
> A. They were distributed.
> Q. Were those people employed?
> A. Yes.
> Q. Were they given bigger salaries?
> A. No.
> Q. Is her job today as we stand . . . do you have a vice president of communications?
> A. No.

Defendants also presented uncontroverted evidence that Plaintiff's termination was necessitated by the fact that APCOM was losing money and that Plaintiff's position was terminated to cut expenses because her position represented the second highest salary at APCOM. Plaintiff did not present countervailing evidence to place these facts in dispute. Based on these facts, Defendants established that Plaintiff was not replaced by a person outside the protected class and that Plaintiff's former duties were assumed by existing employees. Spreading the former duties of a terminated employee among other remaining employees does not constitute replacement. *Brenner v. Textron Aerostructures*, 874 S.W.2d 579, 584 (Tenn. Ct. App. 1993) (citing *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)). Defendants also established that Plaintiff's position was terminated as a cost cutting measure. A court may not intrude upon an employer's legitimate and nondiscriminatory business decision. *Dennis*, 119 S.W.3d at 693. Cost cutting measures, in the absence of evidence of discrimination, are not discriminatory.

The record establishes that there are no material facts in dispute relative to the fourth element of Defendant's claim of discrimination. Moreover, the uncontroverted facts establish a meritorious defense to Plaintiff's claim of discrimination. Accordingly, we find that Plaintiff has failed to establish the fourth element necessary to establish a *prima facie* case of discrimination. Therefore, we affirm the trial court's dismissal of Plaintiff's claims under the Tennessee Human Rights Act on the basis that Plaintiff failed to establish a *prima facie* case of discrimination.

### Breach of Contract and Promissory Estoppel Claims

Plaintiff's breach of contract and promissory estoppel claims were decided following trial. An appellate court's review of a trial court's findings of fact is *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Unless there is an error of law, we must affirm the trial court's decision as long as the evidence does not preponderate against the findings. *Umstot v. Umstot*, 968 S.W.2d 819, 821 (Tenn. Ct. App. 1997). Where the trial court does not make findings of fact, we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999).

Questions of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

The trial court ruled, "Mr. Fehrmann's statements were merely statements of his intent or goal for Plaintiff to be the next president of APCOM. These types of statements do not create an offer to be contractually bound – they are merely statements of the speaker's aspiration and what he or she intends to do in the future." The trial court found that Plaintiff failed to establish the elements of an enforceable contract. Specifically, there was no written document evidencing Mr. Fehrmann's alleged promise of promotion and that any oral promise of promotion was too vague to constitute an offer that could be "accepted." The trial court also found that there was no mutual assent, no consideration and that Mr. Fehrmann lacked the authority to extend such an offer.[11]

## Breach of Contract

To establish a claim for breach of contract, Plaintiff must show that a contract existed by establishing that there was a meeting of the minds, mutual assent to the contractual terms, consideration, and that the contractual terms were sufficiently definite. *Forest Inc. of Knoxville v. Guaranty Mortgage Co.*, 534 S.W.2d 853, 857 (Tenn. Ct. App. 1975) (citing *American Lead Pencil Co. v. Nashville, C. & St.L. Ry.*, 134 S.W. 613 (Tenn. 1911)). The terms of the employment contract, or lack thereof, that Plaintiff is trying to establish is best illustrated in her own testimony. The following exchange is indicative of her understanding of that transaction:

> Q. At any point from 1990 forward, did Mr. Fehrmann ever specify when he intended for that [the promotion] to happen?
> A. No. He never gave a specific date. It was to be a progression.
> . . . .
> Q. During the discussions you had with Mr. Fehrmann concerning the Apcom presidency, he never discussed with you a salary for that position, did he?
> A. No ma'am.
> Q. And he never discussed with you any benefits associated with the Apcom president position?
> A. No ma'am.
> Q. Mr. Fehrmann never provided you during your discussions about the Apcom presidency any written job description for that position?
> A. No. I was never given any written job description for anything since I started.
> . . . .
> Q. Mr. Fehrmann never presented you with an employment contract for the presidency position, did he?

[11]The trial court found that, "Plaintiff did not give up any rights or do anything she was not otherwise required to do as part of her job (duties for which she was paid) in exchange for Mr. Fehrmann's statement that she would be the next president." The trial court also found that Plaintiff did not offer evidence of any opportunity she passed up in exchange for the promise that she would be promoted.

A. An oral. It was oral.

Q. He never provided you with a written employment contract for the Apcom presidency?

A. Not a written, no, ma'am.

Q. And Mr. Fehrmann never discussed with you a specific term or duration with respect to the Apcom presidency?

A. No. No, ma'am.

Q. When Mr. Fehrmann discussed with you the Apcom presidency or his plan or intent to move you into that position, you never made him any promise in exchange for his promise, did you?

A. Yes, ma'am, I did. I made a promise, a commitment that I was excited about the position. That I was committed to seeing it through and to doing a good job.

Q. That's the only promise you made in exchange for Mr. Fehrmann's promise to you concerning the presidency. Correct?

. . . .

A. That's correct.

Based on Plaintiff's own testimony, there was no signed writing evidencing Mr. Fehrmann's alleged promise of promotion. Further, Plaintiff admits that she never received a written job description, never discussed benefits, never negotiated a salary and never established a start date. An enforceable contract requires a meeting of the minds, and indefiniteness as to an essential element can prevent the creation of an enforceable contract. *See Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W. 3d 191, 196 (Tenn. 2001). Without definite contractual terms, mutual assent or meeting of the minds, there can be no contract and thus no breach of contract. Consequently, we agree with the trial court's assessment that Plaintiff failed to prove the required elements of a claim for breach of contract.

Promissory Estoppel

The trial court found that Plaintiff failed to establish her claim of promissory estoppel. It held that Plaintiff offered little evidence of a substantial economic detriment incurred in reliance on Mr. Fehrmann's alleged statements finding that, "During direct examination Plaintiff made very general references to investments she and her husband made in reliance on her continued employment. However, Plaintiff never presented any specific evidence regarding the investments and she never even presented evidence that she was actually harmed."

Promissory estoppel can be described as, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App.1991) (quoting *Restatement (Second) of Contracts* § 90); *see also Alden v. Presley*, 637 S.W.2d 862, 862 (Tenn.1982). Promissory estoppel is also referred to as detrimental reliance because one must show not only that a promise was made, but also that one reasonably relied upon that promise to his or her

detriment. *Calabro v. Calabro*, 15 S.W. 3d 873, 879 (Tenn. Ct. App. 1999). Promissory estoppel is not applicable if: (1) the detriment suffered in reliance is not substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance was not foreseeable by the promisor; and (3) the promisee did not act reasonably in justifiable reliance on the promise as made. *Alden,* 637 S.W.2d at 864 (citing L. Simpson, *Law of Contracts* § 61(2d ed.1965)).

Plaintiff testified, in very vague terms, as to investments she made based on her belief that she would continue to be employed at APCOM. She did not, however, provide any specifics regarding said investments. Plaintiff's testimony seemed to show that any investments she made were based on her belief that she would continue to be employed, not on Mr. Fehrmann's statements. Furthermore, due to the fact that Plaintiff was not given any specifics concerning the purported promotion – she never received a written job description, a salary, a list of benefits or a start date – it was unreasonable for Plaintiff to rely on any such statements made by Mr. Fehrmann. Consequently, Plaintiff failed to show any substantial economic detriment as a result of Mr. Fehrmann's alleged promise of promotion and failed to establish a claim for promissory estoppel. We affirm the decision of the trial court.

### In Conclusion

The judgment of the trial court is modified to the extent it dismissed the THRA claims as time barred. We, nevertheless, find that Plaintiff failed to establish a *prima facie* case of discrimination under the Tennessee Human Rights Act and that she also failed to establish claims for breach of contract and promissory estoppel. Therefore, the judgment of the trial court dismissing all of Plaintiff's claims is affirmed.

This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against Plaintiff, Judy S. Parnell.

_____
FRANK G. CLEMENT, JR., JUDGE